UNITED STATES *v*. DAVIES CO. (No. 2190).[1]

1. WOOL—WOOL ON THE SKIN.
    Wool and wool on the skin are different commodities for tariff purposes and are separate and distinct tariff entities.

2. CONSTRUCTION, EMERGENCY TARIFF ACT OF 1921.
    The emergency tariff act of 1921 neither expressly nor by implication repealed the tariff act of 1913. It modified pro tempore the act of 1913 in certain particulars only, leaving in full effect all other portions of it. At the expiration of the time limit of six months set for itself by the emergency act, the act of 1913 was revived and came again into full force and effect just as it stood on the day the emergency act was passed.

[1] T. D. 39317.

3. LAMB PELTS—WOOL.

Wool and wool on the skin being separate tariff entities and the emergency tariff act of 1921 making no provision for wool on the skin, lamb pelts imported during the life of the emergency act should have been admitted free of duty under the act of 1913. It was error to assess the wool under paragraph 18 of the emergency act.

United States Court of Customs Appeals, November 13, 1922.

APPEAL from Board of United States General Appraisers, G. A. 8540 (T. D. 39155).

(Affirmed.)

*William W. Hoppin,* Assistant Attorney General (*Charles D. Lawrence,* special attorney, of counsel), for the United States.
*Allan R. Brown* for appellee.

[Oral argument October 5, 1922, by Mr. Lawrence and Mr. Brown.]

Before SMITH, BARBER, and MARTIN, Associate Judges.

SMITH, Judge, delivered the opinion of the court:

Lamb pelts imported at the port of New York were classified by the collector of customs as lambskins with the wool on. The skins were admitted free of duty under paragraph 603 of the tariff act of 1913, and the wool on the skins was assessed for duty at 15 cents per pound under paragraph 18 of the emergency tariff act of 1921 as unwashed clothing wool. Paragraph 603 of the act of 1913 and the material parts of paragraph 18 of the emergency tariff act are as follows:

603. Skins of hares, rabbits, dogs, goats, and sheep, undressed.

18. Wool, commonly known as clothing wool, including hair of the camel, Angora goat, and alpaca, but not such wools as are commonly known as carpet wools; unwashed, 15 cents per pound; washed, 30 cents per pound; scoured, 45 cents per pound. Unwashed wools shall be considered such as shall have been shorn from the animal without any cleaning; washed wools shall be considered such as have been washed with water only on the animal's back or on the skin; wools washed in any other manner than on the animal's back or on the skin shall be considered as scoured wool.

The importer protested that wool on the skin was not provided for by the emergency tariff act, and that it was free of duty whether it was regarded as wool or skins or skins with the wool on. The provisions of the free list and parts thereof relied upon by the importer are as follows:

FREE LIST.

That on and after the day following the passage of this act * * * the articles mentioned in the following paragraphs, shall when imported * * * be exempt from duty.

604. Skins of all kinds, raw, and hides not specially provided for in this section.

650. Wool of the sheep, hair of the camel, and other like animals *and all wools and hair on the skin of such animals,* and paper twine for binding any of the foregoing * * *. [Italics ours.]

The Board of General Appraisers sustained the protest and the Government appealed.

The Government contends that wool on the skin is clothing wool and that as it is unwashed it is dutiable at 15 cents per pound under that part of paragraph 18 of the emergency tariff act hereinbefore set out.

The importer argues, first, that wool on the skin is not wool in the tariff sense and that it has been long recognized and provided for by Congress as a separate and distinct tariff entity; second, that even if wool on the skin could be regarded as wool, it is not covered by paragraph 18 of the emergency tariff act, inasmuch as paragraph 18 provides only for washed wools, scoured wools, and for unwashed wools *shorn from the animal* without any cleaning.

We think that the claim of the importer that wool and wool on the skin are different commodities for tariff purposes and are separate and distinct tariff entities is well founded and must be sustained.

The tariff acts of May 19, 1828, July 4, 1832, and August 30, 1842, imposed a duty on wool unmanufactured and provided that *all wool imported on the skin* should be estimated as to weight and value, and should bear the same rate of duty as other imported wool.

The act of March 2, 1861, imposed a duty of 5 per cent ad valorem on wool valued at less than 18 cents per pound, a duty of 3 cents per pound on wool exceeding in value 18 cents per pound and not exceeding 24 cents per pound, and a duty of 9 cents per pound on wool exceeding in value 24 cents per pound. In addition it was provided that *sheepskins raw or unmanufactured imported with the wool on*, washed or unwashed, should carry a duty of 15 per cent ad valorem.

Section 4 of the act of June 30, 1864, and section 1 of the act of 1867, each contained two provisions, the first of which dealt with wool and the second with *sheepskins raw or manufactured imported with the wool on*, washed or unwashed. The duties imposed by both acts on wool differed from that imposed on skins with the wool on.

Section 21 of the act of July 14, 1870, amended section 1 of the act of 1867 by subjecting wool on the skins to the same duty as that imposed on other wools.

Schedule K of the act of March 3, 1883, divided all wools for duty purposes into three classes which were designated as clothing wools, combing wools, and carpet wools and other similar wools. Wools on the skins were, however, separately provided for and subjected to the rates levied on other wools, the quantity and value of wools on the skin to be ascertained under rules prescribed by the Secretary of the Treasury.

Section 375 of the act of October 1, 1890, divided all wools into three classes, the classification being determined by the animal producing the wool or by the places of production or by both. Sections

381, 383, 384, 385, and 386 prescribed the duty which each of the three classes of wool should bear. Wool on the skin was, however, provided for as an independent separate tariff entity by paragraph 387 and subjected to the duty prescribed for other wools, quantity and value to be ascertained under rules prescribed by the Secretary of the Treasury.

Paragraph 685 of the act of August 27, 1894, exempted from duty wool of the sheep, hair of the camel, goat, alpaca, and other like animals, and *also all wool and hair on the skin.*

Paragraph 348 of the act of 1897 and paragraph 360 of the act of 1909 again divided all wools into three classes substantially along the lines indicated by the act of 1890. Paragraphs 354, 355, 356, 357, 358, and 359 of the act of 1897, and like provisions in the act of 1909, laid a different duty on each of the three classes of wool. Wool on the skin was not mentioned in any of the classes of wool and was separately provided for by paragraph 360 of the act of 1897 and by paragraph 371 of the act of 1909, which paragraphs subjected wool on the skin to a duty of 1 cent less per pound than that imposed on other wools of the same class and condition, the quantity and value to be ascertained under rules prescribed by the Secretary of the Treasury.

The act of 1909 specifically removed wool and wool on the skin from the dutiable list and by paragraph 650 exempted from duty by specific designation wool of the sheep, hair of the camel, and other like animals, and *all wools and hair on the skin of such animals.*

It may be said with confidence, therefore, that all the tariff acts for nearly a century dealt with wool and wool on the skin as different commodities, and that while some of the acts imposed on wool on the skin the same duty as that imposed on wools of like character, others imposed a different duty. Whether the duty was the same or different, however, all of the acts recognized wool and wool on the skin as different commercial articles and as distinct separate tariff entities.

Congress is presumed to know the nomenclature and language of commerce. Tariff laws apply especially to men engaged in commerce and are drafted in the words and terms and vocabulary which are in use and understood by the trade. Tariff designations must be held, therefore, to have the sense and meaning assigned to them by trade and commerce, and a distinction once made by Congress as to tariff commodities will be presumed to continue in the absence of anything showing a contrary legislative intention.—Diekerhoff et al. *v.* Robertson (44 Fed. 160); United States *v.* Beierle (1 Ct. Cust. Appls. 457; T. D. 31506); Bloomingdale *v.* United States (3 Ct. Cust. Appls. 204, 206; T. D. 32530); De Jonghe et al. *v.* United States (5 Ct. Cust. Appls. 134, at page 136; T. D. 34189); Reiche *v.* Smythe (13 Wall. 162–163); Arthur *v.* Morrison (96 U. S. 108, 110, 111);

Arthur *v.* Lahey (96 U. S. 112–115); Worthington *v.* Abbott (124 U. S. 434–436); Robertson *v.* Rosenthal (132 U. S. 460, 464).

Congress having dealt with wool and wool on the skin as different commercial articles, it must be assumed that it did so in conformity with the established and subsisting usages of the trade, and that the distinction between wool and wool on the skin continues, nothing to the contrary appearing. Wool on the skin can not therefore be classified as wool.

The Government argues that if paragraph 371 of the act of 1897 had been omitted from the tariff act, wool on the skins would have been classified for duty at the same rate as wools not on the skins. We are not prepared to admit that, inasmuch as the Supreme Court in Robertson *v.* Rosenthal, supra, held that hairpins were not dutiable as pins, notwithstanding the fact that section 21 of the act of July 24, 1870, which established hairpins as a distinct tariff entity, was omitted from the tariff act in which pins were specifically provided for and under which the hairpins in question were imported. Neither can it be argued that wool on the skin was wool for customs purposes because it carried the same duty. Sameness of duty does not imply sameness or even similarity of articles, and if such an implication could arise it certainly could have no place in the case of commodities which have borne a different rate of duty. If, however, all the acts had imposed on wools on the skin the same duty imposed on other wools of the same class and condition, that would not alter the fact that wools and wool on the skins were provided for as separate distinct commodities and tariff entities.

The emergency tariff act of 1921 neither expressly nor by implication repealed the tariff act of 1913. The act of 1921 was designed to meet an emergency, as its name indicates, and it expired by limitation six months from and including the day following its passage. It was intended to modify pro tempore the act of 1913 in certain particulars only, leaving in full effect the unchanged provisions of the earlier act, which act on the expiration of the emergency time limit revived and came again into full force just as it stood on the date the emergency tariff act was passed.

The decision of the Board of General Appraisers is *affirmed.*