(C. D. 1758)

PACIFIC MUTUAL SALES Co. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided February 2, 1956)

*Lawrence & Tuttle* (*Walter I. Carpeneti, Frank L. Lawrence, George R. Tuttle,* and *Charles F. Lawrence* of counsel) for the plaintiff.

*Warren E. Burger* (*Charles J. Wagner, Daniel I. Auster, Chauncey E. Wilowski, Mollie Strum, William J. Vitale, Richard E. FitzGibbon,* and *Samuel D. Spector,* trial attorneys), for the defendant.

Before EKWALL, JOHNSON, and DONLON, Judges; JOHNSON, J., concurring; EKWALL, J., concurring

DONLON, Judge: Counsel have by stipulation, dated November 29, 1955, withdrawn the previous submission and resubmitted this case on that date to the third division as now constituted.

The merchandise in dispute is a product of Japan. It was stipulated on trial:

* * * that the merchandise consists of Sazae, known as Top-Shell; that it is a marine snail known as Turbo (Batillus) Cornutus Solander, a gastropodous mollusk which creeps on the floor of the ocean near Japan; packed in airtight containers; that this species belongs to the Turbinidae family.

The collector had classified the merchandise as snails, prepared, an unenumerated manufactured article, dutiable at 20 per centum ad valorem under section 1, paragraph 1558, of the Tariff Act of 1930.

Plaintiff protested the collector's classification, claiming that the merchandise is shellfish, not specially provided for, and, therefore, duty free under section 201, paragraph 1761, of the Tariff Act of 1930.

Plaintiff subsequently amended its protest to claim further, and at the trial introduced evidence and argued in support thereof, that there was an established and uniform practice of exempting this merchandise from duty as shellfish, not specially provided for, under paragraph 1761; that change in this practice could not be effected without the 30-day notice provided in section 315 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, which notice was not given; and that Article X of the General Agreement on Tariffs and Trade, T. D. 51802, and especially paragraph 2 thereof, likewise makes improper an advance in a rate of duty or other charge on imports under an established and uniform practice, unless notice of such advance is promptly published.

The first question for decision is whether this merchandise is, in fact, an unenumerated article or whether it is shellfish, not specially provided for, as the plaintiff's original protest claims.

Snails, according to the evidence and as a matter of common knowledge, may be either terrestrial snails or marine snails. The Government cites *De Jonghe* v. *United States*, 5 Ct. Cust. Appls. 134, T. D. 34189, in which the merchandise consisted of terrestrial snails, imported from France. They were held dutiable at 10 per centum under paragraph 480, Tariff Act of 1909, the predecessor to paragraph 1558, *supra*. The merchandise we are now considering consists of marine snails, as stipulated, imported from Japan.

In the Tariff Acts of 1890 and 1894, there was provision for free entry, under items separately stated, both of snails and shellfish; but in the Tariff Act of 1897 and in subsequent tariff acts, while continuing free entry of shellfish is provided, snails *eo nomine* are omitted from the free list. Diligent research fails to disclose, in reports and notes relating to the 1897 revision, any mention of snails. We do not know, therefore, why the *eo nomine* provision was omitted in that revision. In the absence of congressional intent to the contrary, marine snails are not to be deemed excluded from their proper classification as shellfish.

The *De Jonghe* case, *supra*, considered the dutiable status of terrestrial snails, subject of the protest in that case, and held they are not included in the free list as shellfish, not specially provided for. Is there such a difference between terrestrial snails and the marine snails, which are the merchandise in this case, that the *De Jonghe* case is not necessarily controlling? We think there is such a difference.

However, even if there were not such a difference in law, it is clear that "a mistake of yesterday should not be perpetuated and thus continue to be the law of today and tomorrow." *Pitcairn Corp.* v. *United States*, 39 C. C. P. A. (Customs) 15, C. A. D. 458, at page 34. There are numerous decisions to like effect.

Shellfish is, of course, not fish. The Tariff Act of 1930 expressly so states.

The term "fish", as used in this Act, does not include shellfish. [Par. 720 (c).]

Shellfish is defined in Webster's New International Dictionary, second edition, as—

* * * Any aquatic invertebrate animal having a shell, esp. a mollusk, as an oyster or clam, or a crustacean, as a lobster.

Crab meat, clams, oysters—generally classed as shellfish—are dutiable, as provided in paragraph 721.

Shrimps, lobsters, "and other shellfish * * * not specially provided for" are on the free list, paragraph 1761.

Snail is defined in Webster's New International Dictionary, second edition, as—

* * * Any of numerous gastropod mollusks; esp., when used without a qualifying term, one of terrestrial habits having a well-developed spiral shell into which the animal can withdraw for protection. * * * Also, often with a qualifying term, any of various other gastropods, particularly if having a spiral shell.

Mollusks are, by definition in the same work, a large division of the animal kingdom "containing most of the animals popularly called *shellfish* * * * which have a soft unsegmented body, * * *," that is to say, mollusks are invertebrate animals.

Sea snail is there defined as—

Any creeping marine gastropod with a spiral shell * * *.

Turtles, like snails, by express language were on the free list in earlier tariff acts, and are now so enumerated. Turtles, like snails, may be either terrestrial or marine. The periwinkle is a European and American species of marine snail; sazae is a Japanese species of marine snail.

The record in this case is confused both by Japanese and English language problems. The merchandise was variously described as sazae, snails, prepared snails, top shells, and prepared shellfish. However, to resolve this language confusion so far as possible in deciding proper classification, my decision rests on the merchandise description that was stipulated on trial, as quoted above.

In the *De Jonghe* case, *supra*, our appellate court rejected a contention that snails were dutiable under the classification of "live animals" and then proceeded to consider whether they were exempt as "shellfish." On this point, the Court of Customs Appeals said:

* * * As snails and shellfish were separately provided for on the free list in the tariff acts of 1890 and 1894, it is evident that snails were not regarded by Congress as shellfish, and that snails and shellfish must be considered as distinct entities for tariff purposes. From this it follows that the designation "shellfish" does not embrace snails, and that as snails were omitted from the free list of the tariff act of 1909 they must be held to be dutiable and not entitled to free entry. Snails are not provided for *eo nomine* or by description in the dutiable list, and apparently they can not be made dutiable by similitude in material, quality, texture, or use to any enumerated article therein provided for. We think, however, that they may be classified as a raw article, designed to be converted into a food, and not enumerated or provided for. We therefore hold that edible snails are dutiable at 10 per cent ad valorem under the provisions of paragraph 480.

Whether or not our appellate court would have arrived at the same conclusion if the merchandise had been marine snails, as here, instead of terrestrial snails, as there, it is not necessary for us to speculate. The holding itself does not extend beyond the facts before the court in that case. It may be observed also that, in the instant case, the Government does not wholly follow the classification ruling laid down in the *De Jonghe* case, on which it relies, claiming that the marine snails, which are the merchandise in this case, are a manufactured article. However, with that exception, the position now taken by the Government seems to be that snails, whether terrestrial or marine,

alike are not shellfish and, therefore, not on the free list under paragraph 1761.

The fact is that *marine* snails fall squarely within the definition of shellfish, for they are an aquatic, that is, marine, invertebrate "animal having a shell, esp. a mollusk * * *." They are, indeed, aquatic mollusks. We find they are shellfish, not specially provided for, in the Tariff Act of 1930.

It is, therefore, not necessary to consider the similitude rule that was discussed by the court in the *De Jonghe* case, *supra*. Shellfish, not specially provided for, is itself an enumerated classification, and there is no need to resort to similitude.

There remains for consideration the question whether, notwithstanding that this merchandise is shellfish, not specially provided for, and, therefore, within the terms of paragraph 1761, there is some rule of construction or precedent that calls on us to exclude the merchandise from the terms of paragraph 1761.

We find no such rule or precedent. The *De Jonghe* case, *supra*, is not controlling, because the merchandise in that case was not marine snails, which this merchandise is.

The rule of construction, for which the Government argues, was decided adversely to its contention in *United States* v. *Hurst & Co. et al.*, 14 Ct. Cust. Appls. 85, T. D. 41584. There, our appellate court had to decide whether the *eo nomine* omission of bleached shellac in the 1922 tariff act resulted in bringing bleached shellac into the unenumerated classification, or whether, as the plaintiffs claimed, it came within the continuing tariff classification of "lac," even though by longstanding administrative practice it had not been so classified. The position of the Government in this respect was stated by the court as follows:

It is argued that from that time [i. e., the Tariff Act of 1894] until the enactment of the Tariff Act of 1922 the administrative practice must have been to impose a duty on bleached shellac, from which it is insisted that the same must still be dutiable.

* * * It may be presumed * * * for the purposes of this case * * * that such classification was adhered to during all the subsequent tariff acts down to and including that of 1913 * * *.

The court held that shellac was properly classified under the Tariff Act of 1922 as lac and not as unenumerated, regardless of any previously prevailing administrative practice, whether erroneous or not.

While not necessarily determinative of correct classification, there is evidence in the record that sazae has been entered over a considerable period of time in west coast ports as shellfish.

Since marine snails actually are shellfish, they are properly classifiable as such, and it is irrelevant whether or not they have, by some

administrative practice, been held dutiable as unenumerated. They are on the free list by provision of paragraph 1761.

In view of our decision that marine snails are shellfish, not specially provided for, and not an unenumerated item, I am of opinion that it is not necessary to decide whether or not there was, as the plaintiff claims and the defendant denies, an established and uniform administrative practice so classifying them. There is no claim as to any established and uniform practice classifying marine snails as something other than shellfish. It is, therefore, likewise unnecessary to hold, as I would have to hold, that the provisions of the General Agreement on Tariffs and Trade may not be invoked to affect the classification of merchandise imported from Japan in April 1949.

We make the following findings of fact and law:

*Of fact*:

1. That the merchandise, subject of this protest, is "sazae," a product of Japan.

2. That "sazae" are marine snails that creep on the ocean floor near Japan.

3. That marine snails are aquatic invertebrates—mollusks—and are shellfish.

4. That the Tariff Act of 1930 makes no *eo nomine* provision for snails.

5. That shellfish, not specially provided for, are on the free list in the Tariff Act of 1930, paragraph 1761.

*Of law*:

1. That the merchandise covered by the subject protest is properly free of duty under paragraph 1761 of the Tariff Act of 1930 as shellfish, not specially provided for.

The protest is, therefore, sustained. Judgment will be rendered accordingly.

CONCURRING OPINION

Johnson, Judge: I concur in the result reached by my associate and submit in support of my conclusion the following:

The question before the court involves the proper classification of merchandise described on the invoices as "Canned Prepared Top Shells" and entered as "Prepared Shellfish (Sazai)." According to the stipulation, it is a marine snail belonging to the Turbinidae family, known as *Turbo (Batillus) Cornutus Solander*, a gastropod mollusk which creeps on the floor of the ocean. A shell of one of the creatures was received in evidence as plaintiff's illustrative exhibit 1. It is a heavy, turbinate, spiral, horny shell, about 4 inches in diameter, with a pearly interior.

The record contains very little additional information about the character of the merchandise. Plaintiff's witness Tadashi Yamaguchi

testified that he had imported sazae from Japan since 1919, except during the war, and that such merchandise is called top shell in English and sazae in Japanese. He said that he sold it by the latter name to the Japanese trade and that it is not sold or known in the trade as snails; that it is a shellfish; and that the meat looks like abalone meat, also a shellfish. Tokuso Shida testified that he had imported such merchandise from 1927 to 1933. He said that sazae is a Japanese word meaning shellfish, snail, but that it does not cover all shellfish, there being many different kinds, such as abalone, oyster, clam, and lobster.

Although the invoices and the witnesses used the English name "top shell" to cover the imported merchandise, said term refers to marine snails of the Trochidae family (Webster's New International Dictionary), whereas this merchandise, according to the stipulation, belongs to the Turbinidae family. The shell, plaintiff's illustrative exhibit 1, resembles those of the Turbinidae rather than those of the Trochidae family. See illustrations in *World-Wide Sea Shells*, by Maxwell Smith, pages 11 and 14, and *A Handbook of Illustrated Shells in Natural Colors from Japanese Islands and their Adjacent Territories*, by Shintaro Hirase, plates 65 and 73. The *Turbo Cornutus* is called the horned turbine by Maxwell Smith (*op. cit.*, p. 14).

Counsel have agreed that this merchandise is a marine snail, a gastropod mollusk. The mollusks are a division of invertebrate animals, and the gastropods are the division of mollusks which comprises most of the existing forms having a univalve shell and many shell-less forms. Snails, whelks, and slugs are examples. (Funk & Wagnalls New Standard Dictionary; Webster's New International Dictionary; Encyclopaedia Britannica, vol. 10, p. 58.) The term "snail" is of popular, rather than zoological significance, and is applied especially to gastropod mollusks, having a spiral shell and of terrestrial habits. (Webster's New International Dictionary; Nelson's Perpetual Loose-Leaf Encyclopaedia; Funk & Wagnalls New Standard Dictionary.) The typical snail belongs to the genus *Helix*, which comprises land snails. (Nelson's Perpetual Loose-Leaf Encyclopaedia; Webster's New International Dictionary; Funk & Wagnalls New Standard Dictionary.) However, the term "snail" is also used to cover shell-bearing gastropod mollusks living in the sea and in fresh water (Collier's Encyclopedia, vol. 17, p. 662; Columbia Encyclopedia, p. 1842; Funk & Wagnalls New Standard Dictionary; New Century Dictionary). In *Fishes and Shells of the Pacific World*, by John T. Nichols (American Museum of Natural History) and Paul Bartsch (Smithsonian Institute), in a chapter on mollusks, there is a subheading "Class Gastropoda (Snails)." It is stated (p. 147):

Members of this class are to be found from the polar regions to the equator, as well from the shore-line to abyssal depths. On land their horizontal distribution

is equally extensive. * * * We may, therefore, say that the distribution of the class is universal.

"Shellfish" is another term of popular, rather than scientific significance, and has been defined to mean an aquatic invertebrate animal, having a shell, especially a mollusk or a crustacean (Webster's New International Dictionary; Funk & Wagnalls New Standard Dictionary; New Century Dictionary). In *The Wealth of the Sea*, by Donald K. Tressler, it is stated (p. 256):

Many other shell-fishes are found on our coasts, the most important being cockle, periwinkle, whelk, piddock, natica, donax, and chiton.

Of these, periwinkles, whelks, and natica are marine snails (Webster's New International Dictionary). See also *State ex rel. White* v. *Hill*, 125 N. C. 194, 34 S. E. 432, which quotes the following definition of "shellfish":

[ * * * The term is chiefly applied, in commerce, to crabs, lobsters, and croyfish *sic*], oysters, mussels, periwinkles, and whelks.

I conclude that the merchandise involved herein falls within the meaning of the term "shellfish" and that of the term "snail," although the latter, when used unmodified, generally refers to land snails.

The question before the court is whether the term "shellfish," as used in paragraph 1761 of the Tariff Act of 1930, includes the within merchandise. That term, as used in prior tariff acts, has been construed to cover various types of aquatic animals having a shell. In *Sang Kee, Fong Kee & Co. et al.* v. *United States*, 4 Treas. Dec. 971, T. D. 23418, which arose under the Tariff Act of 1897, it was held that cuttlefish were entitled to free entry as shellfish. It was stated in the decision:

The United States Fish Commissioner, to whom a sample of the merchandise was submitted, reports as follows:

In reply to your letter of July 10, you are informed that the word shellfish is an unscientific term of indefinite meaning. Taken in its broadest sense, it includes molusca and crustacea, and, therefore, embraces the cuttle fish.

The Standard Dictionary defines cuttle fish as "a disbranchiate cephalopodous mollusk."

While the species of fish before us is not of the well-known common variety of cuttle fish with sucker-bearing arms, sometimes called a squid, it appears from the above descriptions to be a species of cuttle fish scientifically called sepia, being the variety from which the cuttle bone of commerce is derived. *Such fish being a mollusk, it is necessarily a species of shellfish and as the provisions of paragraph 659 provide for the free entry of all shellfish without limitation, these fall within it.* [Italics supplied.]

This decision was followed in *Soy Hing Cheong & Co.* v. *United States*, 11 Treas. Dec. 713, Abstract 11359, appeal dismissed, 14 Treas. Dec. 286, suit 1834.

Other decisions construed the term "shellfish" as embracing prawns, octopus, kitefish, flatfish, calamares (a species of cuttlefish), mos-

cardini, and crawfish paste. *C. H. Wyman & Co.* v. *United States,* 12 Treas. Dec. 648, T. D. 27791; *Strohmeyer & Arpe Company* v. *United States,* 14 Treas. Dec. 296, Abstract 17151; *Asia Company* v. *United States,* 14 Treas. Dec. 296, Abstract 17155; *Strohmeyer & Arpe Company* v. *United States,* 15 Treas. Dec. 192, Abstract 18237; *John Solari & Co.* v. *United States,* 16 Treas. Dec. 77, Abstract 19486; *J. Weber* v. *United States,* 19 Treas. Dec. 106, Abstract 22628.

On the other hand, in *Vincenzo Sabella* v. *United States,* 19 Treas. Dec. 512, Abstract 23285, land snails were held not classifiable as shellfish, since they were not aquatic animals.

Thereafter, in *De Jonghe* v. *United States,* 5 Ct. Cust. Appls. 134, T. D. 34189, land snails (described in the decision as escargots or edible snails)[1] were again found not classifiable as shellfish. The merchandise had been subjected to duty under paragraph 229 of the Tariff Act of 1909 as "live animals." It was claimed that they were free of duty under paragraph 671 of said tariff act, which covered shrimps and other shellfish, or that they were dutiable under paragraph 480 as nonenumerated unmanufactured articles. The latter claim was sustained by the court. The decision rested upon the principle that "Words to which Congress has given a special meaning in a tariff act will be presumed to retain that signification in a subsequent tariff act relating to the same subject matter." In view of that principle, it was held that the merchandise was not classifiable as live animals, since that term was used by Congress in its popular sense, referring to quadrupeds. It was further held that snails were excluded from classification as shellfish on the ground that, since earlier tariff acts had provided separately for both snails and shellfish, it was evident that Congress did not regard snails as shellfish and that they must be considered as distinct entities for tariff purposes.

There is nothing in the decision in the *De Jonghe* case to show whether the court was using the term "snail" in the more usual sense of land snails or in the wider sense which would include most gastropod mollusks. The snails before the court were land snails, so it was unnecessary for it to determine the classification of such snails as might be aquatic animals.

That the *De Jonghe* case has not been considered by the administrative authorities as applying to aquatic snails is evidenced by the record presented herein. According to the testimony, sazae had been entered free of duty in San Francisco and Seattle from 1919 to 1950 and in Los Angeles from 1933 to 1950. Depositions of three witnesses in Honolulu state that sazae were classified free of duty as shellfish prior to 1950. In Portland, while a customs liquidator testified that an entry of sazae in 1941 had been classified as a nonenumerated manu-

---

[1] "Escargot" is a French word, being the common name of gastropod mollusks of the genus *Helix*. (Nouveau Petit Larousse.)

factured article, another witness stated that, according to his records, sazae had been classified free of duty between 1924 and 1945. Another witness testified that his firm, which imported sazae from 1929 to the outbreak of the war, had never paid duty on sazae.

Whether or not this merchandise was imported at other ports does not appear, but there is evidence that sazae comes only from Japan. It also appears from the publications already mentioned that *Turbo Cornutus* is found in Japanese waters (Shintaro Hirase, *op. cit.*; Nichols and Bartsch, *op. cit.*). It seems probable, therefore, that importations were primarily at west coast ports.

Long-continued administrative practice, construing terms of a tariff act, when followed by subsequent legislation making no change in such terms, is a very persuasive and often a controlling factor. *Washington Handle Co.* v. *United States*, 34 C. C. P. A. (Customs) 80, 85, C. A. D. 346; *United States* v. *Larzelere & Co.*, 6 Ct. Cust. Appls. 273, T. D. 35502. The reason for this principle was stated in *United States* v. *H. Bayersdorfer & Co.*, 16 Ct. Cust. Appls. 43, 46, T. D. 42717, as follows:

It is clear, therefore, that for a period of 17 years and until January, 1926, so-called moss wreaths have not been classified as wreaths within the meaning of the Tariff Acts of 1909, 1913, and 1922, but as moss manufactured and dyed. Such a long-continued administrative classification of the merchandise should not be disturbed at this late day. Importers have a right to rely on long-continued administrative practice and if any change is to be made it should be made by Congress, which is presumed to know that moss wreaths had been denied classification as wreaths during the life of two tariff acts and for more than 3 years under the tariff act now in force.

In the instant case, there has been an administrative practice of classifying sazae as shellfish under prior tariff acts, and no legislative change has been made. That the term "shellfish" was intended by Congress to have a broad meaning may be inferred from statements in the Summary of Tariff Information, 1921, and the Summary of Tariff Information, 1929, which were prepared for the use of Congress prior to enacting the Tariff Act of 1922 and the Tariff Act of 1930, respectively. These documents state that included under "other shellfish" are oysters, crabs, clams, scallops, squid, abalone, crawfish, and others (Summary of Tariff Information, 1921, p. 1428; Summary of Tariff Information, 1929, p. 2566).

Pertinent also is the statement in the Summaries of Tariff Information, 1948 (vol. 16, part 4, p. 254) that included under "other shellfish" are such species as "conches, crawfish (fresh-water), sea mussels, octopus, periwinkles, cockles, sea urchins, squid, and many others." Periwinkles are, by definition, small marine snails (Webster's New International Dictionary).

I conclude that the within merchandise, marine snails, is properly classifiable as "shellfish." Although the language of the decision in

the *De Jonghe* case might be construed to exclude all snails from classification as shellfish, logic and long-continued administrative practice are to the contrary. In my view, that decision, which is entirely correct as to land snails, is not applicable to marine snails, which are, in fact, a variety of shellfish.

CONCURRING OPINION

EKWALL, Judge: I join in Judge Johnson's concurring opinion.