HECHT PEARL Co. (Inc.) v. UNITED STATES (No. 3354)[1]

[1] T. D. 44375.

United States Court of Customs and Patent Appeals, November 3, 1930

*Barnes, McKenna & Halstead* (*Mary Rehan* and *Samuel M. Richardson* ·of counsel) for appellant.

*Charles D. Lawrence,* Assistant Attorney General (*Ralph Folks,* special attorney, of counsel), for the United States.

[Oral argument October 7, 1930, by Mr. Richardson and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

Certain imitation pearl beads on strings imported by appellant were classified and assessed for duty by the collector of customs at the port of New York as jewelry under paragraph 1428 of the Tariff Act of 1922, the material portion of which reads:

PAR. 1428. Jewelry, commonly or commercially so known, finished or unfinished, of whatever material composed, valued above 20 cents per dozen pieces, 80 per centum ad valorem; * * *

Appellant protested, claiming the merchandise to be properly dutiable under that portion of paragraph 1403, which reads:

PAR. 1403. * * * imitation pearl beads of all kinds and shapes, of whatever material composed, strung or loose, mounted or unmounted, 60 per centum ad valorem; * * *

The Customs Court arrived at the conclusion that the articles are unfinished jewelry; the action of the collector was sustained, and the protests overruled. Appeal was then taken to this court.

At the trial of the case a number of samples representative of the merchandise involved in the several protests were introduced as exhibits. The Customs Court made specific findings relative to the nature and condition of each of the items. These findings are as follows:

Item 343 is represented by Exhibit 3. This consists of a complete necklace of imitation pearl beads. The pearls are fastened together in three strands, the center strand being the largest. Pendent from this necklace is a large egg-shaped pearl bead, partially covered with strands of small pearl beads. This article has all the appearances of a finished necklace, ready to wear, and is highly ornamental.

No. 200 is represented by Exhibit 1. · This sample is not in good condition. Some of the pearl beads are lacking therefrom. The beads are strung on double silk threads in an ornamental design with large and small beads alternating.

No. 957 is stated by the witness to be represented by Exhibit 2. It is not in good condition, and could not be worn in the condition in which it is presented to the court. It consists of a necklace of imitation pearl beads strung on double silk threads.

The witness then testified that items 343 and 483 are the same, the difference being in the pendant, the bead in one being oval and in the other round.

Item 336 is described by the witness as a bracelet "with three or four parts of metal," and is represented by Exhibit 4. It consists of a short band composed of four strands of imitation pearls. The sample does not contain metal, is not in good condition, and could not be worn in the shape in which it is presented to the court. The threads on which the beads are strung appear to be of silk and of ample strength.

Exhibit 5 consists of a necklace of imitation pearl beads strung on double silk threads. The strands are triple, and are held together in two places by short white metal strips pierced with three holes through which the silk threads pass. In the middle of each strand are graduated pearl beads of a larger size than those composing the bulk of the necklace. It is not in good condition.

Exhibit 6 is not in good condition. It is a necklace of imitation pearl beads strung in an ornamental design on double silk threads. There is a pendant therefrom composed of a larger bead ornamentally covered with small beads, below which are two short strands of graduated beads each of which terminates in a pear-shaped imitation pearl bead.

Item 999 consists of imitation pearl beads fancifully strung in necklace length on double silk threads. The bulk of the article consists of small beads, but at intervals on the string are clusters of larger graduated beads. Pendent from the article is a sort of tassel composed of three strands of graduated pearl beads. It needs a clasp to complete it.

Exhibit 8 consists of imitation pearl beads strung on quadruple silk strings, in fancy designs. It appears to be an unfinished necklace which only lacks a clasp to complete it.

Exhibit 9 appears to be a complete necklace composed of several strands of strung imitation pearl beads. One has seven, the other five strands separated and held in line by strips of white metal pierced with holes through which the strings of the strands of beads pass. These samples appear ready for use as necklaces without further manufacture. They are without clasps.

It is the insistence of appellant that the merchandise is not "jewelry" in a tariff sense but "imitation pearl beads, strung" provided for *eo nomine* in paragraph 1403, and that it is the rule of law that "an *eo nomine* designation must prevail against terms of general description and designation." In support of this the brief quotes from the opinion of the Supreme Court in the case of *Chew Hing Lung* v. *Wise*, 176 U. S. 156:

The designation of an article, *eo nomine*, either for duty or as exempt from duty, must prevail over words of a general description which might otherwise include the article specially designated.

Appellant's brief quotes from Bouvier's Law Dictionary, Words and Phrases, and the Eleventh Edition of the Encyclopedia Britannica, relative to the definition of the word "jewelry" and from the Century Dictionary the definition of "necklace."

As we understand the contention of appellant it is that "jewelry" is a term of broad import including "all articles under the genus"

while "imitation pearl beads, strung," even if included under the general designation of "jewelry," is specific, and, being specific, should be classified where *eo nomine* designated.

Furthermore, the insistence is that even if some articles made of imitation pearl beads, such as necklaces, are, under the court decisions, specifically "jewelry" and classifiable as such, because they have become "articles," they are articles which have been carried to a further state of completion than has the merchandise here involved; that the "imitation pearl beads, strung" here at issue are "material" and have not become "articles" subject to paragraph 1428, because they are unfinished and, in many instances, are restrung and rearranged before being sold, and because most of them, in the condition as imported, are without clasps or other items which are required to be upon them in order for them to be worn.

It is also insisted that the legislative history of paragraph 1403 "seems to preclude the possibility of imitation pearl beads such as those in the case at bar being excluded from that paragraph by the phraseology of any other paragraphs," and the court is favored with a statement of this history.

These insistences involve questions of law, except that the one relative to their being "material" and not "articles" necessitates a finding of fact relative to their condition as imported. The Customs Court has made this finding and it is, we think, amply supported by the weight of the testimony.

To add to the length of this opinion by quoting the testimony is not deemed necessary. There are liberal quotations in the opinion of the Customs Court.

The Customs Court found, as quoted *supra*, that certain of the samples were "not in good condition," and a number of them "could not be worn in the condition in which *presented to the court*," but all consisted of imitation pearl beads strung on double silk thread. Exhibit 3 was found to be a completely finished necklace. Others lacked only clasps to complete them for necklaces or bracelets.

The court, after quoting from the testimony, said:

It seems to us this merchandise is something more than imitation pearl beads, strung. *In its imported condition* it has been sufficiently manufactured to pass beyond the stage of materials and to become articles; whether those articles be finished or unfinished is immaterial. *As imported* it has been dedicated to one particular use, viz, in the case of all the articles, except Exhibit 4, for use as necklaces, and as to Exhibit 4 for use as a bracelet. What the plaintiff may choose to do with these articles after importation does not matter. It is the imported condition of the merchandise which is the criterion. * * * [Italics theirs.]

In this holding we think that, under the authorities, there is no error. According to the testimony of Mr. Sigmund Hecht, president and manager of the Hecht Pearl Co., a wholesale dealer in the class

of merchandise involved and the importer in this case, at least 50 per centum of it is sold in the exact condition as imported, while some is restrung in the company's own plant and some is sent out to other plants for restringing. Miss Frendel, another witness who is an employee of the importing company, testified that she had herself done some of the reworking of these articles and, being asked as to the purpose of the restringing, said:

> The sole purpose is to add some necessary ornament, a crystal of some kind or an ornament of some kind to make the article complete; sometimes add a clasp or a bar of some kind which will complete the necklace.

We are satisfied from the whole record in the case that the merchandise which is restrung or reworked is so treated by the importer, not because it must be in order to put it in condition for sale as an article (except, of course, any item that might be damaged) but as a matter of choice, and an election on the part of the importer to do something additional to an importation, after receiving it, does not affect its classifiable status. This status must be determined upon the basis of its condition as and when imported.

Consequently we agree that the merchandise in issue has been advanced from the state of "material" and has become, in the case of Exhibit 3, a finished necklace, and in the other cases, unfinished "articles" which constitute "unfinished jewelry."

This leaves to be determined, therefore, only the question of whether the merchandise should be classified as unfinished jewelry (in the case of Exhibit 3 as finished jewelry) under paragraph 1428, or as imitation pearl beads under paragraph 1403 by reason of the *eo nomine* provision in the latter paragraph.

We have examined carefully the authorities cited in the briefs of the parties.

In the case of *Chew Hing Lung, supra,* the involved merchandise was tapioca. It arose under the Tariff Act of 1890. The collector classified it as a starch and assessed duty; the importer claimed it to be free because specifically mentioned by name under a free list paragraph. The Supreme Court sustained the importer's contention as to classification, but we do not regard that case as being controllingly analogous to the case at bar. There are, at least, subsequent cases hereinafter referred to which seem more nearly in point.

In *Heller & Son* v. *United States,* 12 Ct. Cust. Appls. 368, T. D. 40521, cited by appellant, the imitation pearl beads involved appear from the opinion to have been "loosely strung for facility in transportation only" and were classified under paragraph 1403. The question involved here was not, therefore, at issue there, under the facts of the respective cases. The claim of the importer in that case was under paragraph 218 or 230, so that paragraph 1428 was not involved.

Our recent decision in *United States v. Jules Raunheim et al.*, 17 C. C. P. A. (Customs) 425, T. D. 43867, is also referred to by appellant. We there reviewed the previous decision of this court in *United States v. Andrews*, 15 Ct. Cust. Appls. 412, and affirmed the conclusions reached in the last-mentioned case. These cases involved genuine pearls, temporarily strung. The pearls were in hanks or bunches and not in necklace or bracelet form, so there is no applicable analogy between those cases and the instant one.

In *United States v. May Department Stores*, 15 Ct. Cust. Appls. 46, T. D. 42151, this court held "Rose-colored glass beads, cut, faceted, graduated and permanently strung into necklaces," the same being imitations of certain precious stones, to be "jewelry," etc., and as such classifiable under paragraph 1428, rather than as "all other beads in imitation of precious and semiprecious stones  *  *  * strung or loose, mounted or unmounted" under paragraph 1403. In that case were cited *American Bead Co. v. United States*, 7 Ct. Cust. Appls. 18, T. D. 36259; *United States v. Woolworth*, 10 Ct. Cust. Appls. 194, T. D. 38552; *United States v. Doragon*, 13 Ct. Cust. Appls. 182, T. D. 41051; and *United States v. International Forwarding Co.*, 13 Ct. Cust. Appls. 190, T. D. 41052, as having a bearing upon the issue involved.

In *United States v. Field & Co.*, 15 Ct. Cust. Appls. 315, T. D. 42486, this court held that imitation pearl beads made up into a finished necklace, mounted with a clasp and with fancy pieces of metal "are," to quote the syllabus, "no longer imitation pearl beads under paragraph 1403  *  *  * but jewelry under paragraph 1428." This decision rested upon the authority of the *May* case, *supra*.

In *United States v. Murphy & Co.*, 15 Ct. Cust. Appls. 266, T. D. 42464, the court, referring to the *May* case, *supra*, said:

*  *  *  But we there held, in effect, that if it were conceded or shown that the articles of importation were necklaces, and, as such, jewelry, then they could not also be beads.  *  *  *

The opinion in the *Murphy* case immediately above cited, describing the merchandise, refers to it as finished necklaces and says:

*  *  *  These necklaces  *  *  * were all composed of imitation pearl beads, strung upon cheap, but substantial, strings, without metal clasps, and were intended to be fastened about the neck of the wearer by tying the projecting ends of the string upon which the beads have been strung.  *  *  *

In the *May*, *Field & Co.*, and *Murphy & Co.* cases, *supra*, the merchandise held to be "articles" and properly classifiable as jewelry was, it seems, looked upon as being in a finished state. In the instant case (except as to Exhibit 3) it was found that the merchandise is "unfinished jewelry." The issue, therefore, seems to be reduced to the question, May a distinction be made solely on the ground that one is finished and the other unfinished?

We do not think so.

The paragraph (1428) reads "* * * finished or unfinished * * *."

If the unfinished product has become an article, therefore, it is necessarily an article of unfinished jewelry and so provided for quite as specifically as is the finished article of jewelry. To hold otherwise would be illogical and inconsistent with sound reasoning.

Much of the reasoning in the case of *United States* v. *Cartier (Inc.),* 15 Ct. Cust. Appls. 334, T. D. 42493, seems in point upon this issue.

In considering appellant's argument, based upon the legislative history of paragraph 1428, it must be borne in mind that it would apply with quite as much force to finished articles of imitation beads— that is when the finished articles have become jewelry—as to those unfinished, and to now adopt appellant's theory would result in an abandonment of the principle upon which those cases, holding the finished articles to be jewelry and so classifiable for tariff purposes, were determined. We are not impressed with the insistence that the legislative history is properly capable of such a construction.

Upon the authorities cited, we hold that the judgment of the Customs Court should be and the same is *affirmed.*